**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN RICHARDSON, MICHELLE HUNT, JOHN WHITE and JACQUELINE BOWSER, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>VERDE ENERGY USA, INC.,<br><br>            Defendant. | CIVIL ACTION NO.: 5:15-cv-06325-LS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Brian Richardson, Michelle Hunt, John White and Jacqueline Bowser ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint (the "Complaint") against Defendant Verde Energy USA, Inc. ("Defendant"), and allege, upon personal knowledge as to their own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.     Plaintiffs bring this Complaint against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C § 227, *et seq.* ("TCPA") and invaded Plaintiffs' privacy by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.     Defendant made one or more unauthorized calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") and/or a pre-recorded voice for the purpose of soliciting business from Plaintiffs.

3.     The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs seek an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Classes under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.     Plaintiff Brian Richardson is a citizen of Pennsylvania and resides in Clayton, Berks County, Pennsylvania.

5.     Plaintiff Michelle Hunt is a citizen of Illinois and resides in Madison, Madison County, Illinois.

6.     Plaintiff John White is a citizen of New York and resides in Syracuse, Onondaga County, New York.

7.     Plaintiff Jacqueline Bowser is a citizen of New York and resides in White Plains, Westchester County, New York.

8.     Defendant Verde Energy USA, Inc. is a corporation organized under the laws of Delaware. Defendant maintains its principle place of business in Norwalk, Connecticut.

9.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

2

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

11.     The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of each of the Classes is a citizen of a state different from Defendant's.  Furthermore, the Classes include at least 100 members.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

14.     Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.     Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

18.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry.

19.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

20.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

21.     With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and*

5

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

22.     Finally, the TCPA established the National Do-Not-Call list, as well as the requirement that all businesses that place calls for marketing purposes maintain an "internal" Do-Not-Call list ("IDNC list"). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC violates the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

## COMMON FACTUAL ALLEGATIONS

23.     Defendant operates an energy company that purportedly offers consumers low priced electricity. Unfortunately for consumers, Defendant utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting its services. Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers.

24.     In Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients, and continued to make calls after requests that the calls stop. As such, Defendant not only invaded the personal

privacy of Plaintiffs and members of the Classes, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF RICHARDSON

25.     During and around October and November of 2015, Defendant contacted Plaintiff Richardson on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1) multiple times without first obtaining Plaintiff Richardson's written consent.  The calls continued thereafter.

26.     Plaintiff Richardson received all calls as described above on his cellular telephone assigned a number ending in 8191.

27.     Plaintiff Richardson's caller ID showed "482-240-4013" whenever Defendant called his cellular phone.

28.     Plaintiff Richardson was able to answer at least one of the calls and interact with Defendant's autodialer and live representative.   Once he realized that Defendant was a telemarketer, Plaintiff Richardson stopped answering calls from the number he had associated with Defendant.

29.     When Plaintiff Richardson answered a call, the other end of the line was silent. Plaintiff Richardson was ultimately greeted by a live representative.

30.     Defendant's representative then tried to convince Plaintiff Richardson to switch energy providers.

31.     Plaintiff Richardson was not interested in Defendant's services and asked Defendant to stop calling him.

32.     Plaintiff continued to receive multiple calls daily, which has led to him take legal action to stop this egregious invasion of privacy.

33.     Plaintiff Richardson also received multiple live and pre-recorded messages on his voicemail.  On information and belief, Defendant's automated system called Plaintiff Richardson on every occasion.

34.     On information and belief, and based on the circumstances of the calls as described above, Defendant called Plaintiff Richardson using an ATDS.

35.     Due to the extraordinarily high volume of calls and because he received calls despite having asked that they stop, it was obvious to Plaintiff Richardson that a computer was dialing his number.

36.     Plaintiff Richardson understood the purpose of Defendant's calls was to solicit business from him.

37.     Plaintiff Richardson is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8191.

**FACTUAL BACKGROUND AS TO PLAINTIFF HUNT**

38.     Since around August 2015 to the present, Defendant has contacted Plaintiff Hunt on her cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), multiple times without first obtaining her written consent.

39.     Plaintiff Hunt received all calls as described above on her cellular telephone assigned a number ending in 3504.

40.     Plaintiff Hunt's caller ID showed "618-717-4007" whenever Defendant called her cellular phone.

41.     When Plaintiff Hunt answered a call, she experienced a moment of "dead air" before a live representative ultimately engaged her and tried to convince her to switch energy providers.  She also heard background noise during the calls, which she identified as a call center.

8

42.     Plaintiff Hunt told Defendant's representative that she was not interested in becoming a customer and asked for the calls to stop.  Unfortunately for Plaintiff Hunt, she received dozens of additional calls.

43.     Plaintiff Hunt believes a computer called her because she knew the calls originated from a call center, she was not immediately engaged by the caller, and the calls continued despite her requests that the calls stop.

44.     On information and belief, Defendant's automated system called Plaintiff Hunt on every occasion.

45.     On information and belief, and based on the circumstances of the calls, Defendant called Plaintiff Hunt using an ATDS.

46.     Plaintiff Hunt understood the purpose of Defendant's calls was to solicit business from her.

47.     Plaintiff Hunt is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 3504.

### FACTUAL BACKGROUND AS TO PLAINTIFF WHITE

48.     From around October 2015 to the present, Defendant has contacted Plaintiff White on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), multiple times without first obtaining his written consent.

49.     Plaintiff White received all calls as described above on his cellular telephone assigned a number ending in 6537.

50.     Plaintiff White's caller ID showed "315-636-5039" whenever Defendant called his cellular phone.

9

51.     When Plaintiff White answered a call, there was a brief pause before Defendant's representative asked for "John." The representative always pitched Plaintiff better rates on his electricity service if he signed up with Defendant as a customer.

52.     Plaintiff White told Defendant's representative that he was not interested in becoming a customer and asked for the calls to stop. Unfortunately for Plaintiff White, he received dozens of additional calls.

53.     Plaintiff White believes that a computer called him because he was not immediately engaged by the caller, and the calls continued despite his requests that the calls stop.

54.     On information and belief, Defendant's automated system called Plaintiff White on every occasion.

55.     On information and belief, and based on the circumstances of the calls, Defendant called Plaintiff White using an ATDS.

56.     Plaintiff White understood the purpose of Defendant's calls was to solicit business from him.

57.     Plaintiff White is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6537.

58.     With respect to all Plaintiffs, Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

59.     Plaintiffs did not provide Defendant prior express written consent to receive calls to their cellular telephones utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

60.     All calls Defendant made to Plaintiffs invaded Plaintiffs' privacy and violated 47 U.S.C. § 227(b)(1).

10

## FACTUAL BACKGROUND AS TO PLAINTIFF BOWSER

61.     Between November 17, 2015 and November 18, 2015, Defendant made at least four robocalls to Plaintiff Bowser on her cellular telephone in order to sell her electricity.

62.     Plaintiff Bowser received all calls as described above on her cellular telephone assigned a number ending in 9404.

63.     Plaintiff Bowser's caller ID showed "(917) 746-8196" and "Verde Energy" whenever Defendant called her cellular phone.

64.     Each time Plaintiff answered the phone during these calls, she heard a pause or dead air before anyone on the line began to speak, indicating use of an automatic telephone dialing system.

65.     Each time that Plaintiff answered the phone during these calls, she asked Defendant to stop calling her, but it continued to call.

66.     On information and belief, Defendant's automated system called Plaintiff Bowser on every occasion.

67.     On information and belief, and based on the circumstances of the calls, Defendant called Plaintiff Bowser using an ATDS.

68.     Plaintiff Bowser understood the purpose of Defendant's calls was to solicit business from her.

69.     Plaintiff Bowser is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 9404.

70.     With respect to all Plaintiffs, Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

71.     Plaintiffs did not provide Defendant prior express written consent to receive calls to their cellular telephones utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

72.     All calls Defendant made to Plaintiffs invaded Plaintiffs' privacy and violated 47 U.S.C. § 227(b)(1).

73.     Plaintiffs have reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

74.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiffs, on behalf of themselves and Classes of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

75.     On behalf of Plaintiffs and the Classes, Plaintiffs seek an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

## **CLASS ACTION ALLEGATIONS**

76.     Plaintiffs bring this action pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of:

1)      The "ATDS Class," consisting of all individuals in the United States who received a call made by or on behalf of Verde Energy USA, Inc. to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date that class notice is disseminated, where Defendant's records fail to indicate prior express written consent from the recipient to make such call; and

2)      The "IDNC Class," consisting of all persons in the United States who, after notifying Defendant that they no longer wished to receive calls from

or on behalf of Defendant, received one or more calls from or on behalf of Defendant from March 1, 2012 to the date that class notice is disseminated.

77.     Plaintiffs reserve the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

78.     Plaintiffs and the Class members were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiffs and the Class *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid; and Plaintiffs and Class members' privacy was invaded.

79.     The exact size of the Classes is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable. Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes.

80.     There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

81.     Common questions for the Classes include, without limitation:

      a.     Whether Defendant's conduct violated the TCPA;

      b.     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013, and/or continued to make calls after being requested to stop;

      c.     Whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct;

d.    Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

e.    Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

82.    Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Classes.

83.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions.

84.    Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

85.    This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole.

86.    Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

87.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

14

88.     The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

89.     Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct.

90.     Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

91.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227

92.     Plaintiffs re-allege and incorporate by reference each preceding paragraph as though fully set forth herein.

93.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiffs' and the Class members' cellular telephones for the purpose of marketing products and/or services to Plaintiffs and the Classes.

94.     Defendant made the calls without obtaining prior express written consent from Plaintiffs and the Classes, and continued to make calls after being told to stop.

95.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

96.     Defendants' conduct invaded Plaintiffs' privacy.

97.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiffs and the Classes are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

98.     Because Defendant had knowledge that Plaintiffs and the Classes did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the Classes.

99.     Plaintiffs and the Classes are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

100.    Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully set forth herein.

101.    Plaintiffs are entitled to recover reasonable attorney fees and request that attorneys' fees be awarded.

## JURY DEMAND

Plaintiffs and the Classes demand a jury trial on all issues so triable

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, respectfully request the following relief:

a.      An order certifying this matter as a class action with Plaintiffs as Class Representatives, and designating Hughes Ellzey, LLP, Berger & Montague, P.C. and Bursor & Fisher, P.A. as Class Counsel.

b.      An award of actual or statutory damages for each and every negligent violation to each member of the Classes pursuant to 47 U.S.C. § 227(b)(3)(B);

c.      An award of treble actual or statutory damages for each and every knowing and/or willful violation to each member of the Classes pursuant to 47 U.S.C § 227(b)(3)(B);

d.      Injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.      Pre-judgment and post-judgment interest on monetary relief;

f.      An award of reasonable attorneys' fees and court costs in this action;

g.      All other and further relief as the Court deems necessary, just, and proper.

Dated: February 26, 2016               Respectfully Submitted,

*/s/ Shanon J. Carson*
Shanon J. Carson
Pa. Bar No. 85957
Arthur Stock
Pa. Bar No. 64336
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-4656
**FACSIMILE:** (215) 875-4604
scarson@bm.net
astock@bm.net

W. Craft Hughes
Jarrett L. Ellzey
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Telephone: (713) 554-2377
Facsimile: (888) 995-3335
craft@hughesellzey.com
jarrett@hughesellzey.com

*(Pro Hac Vice admission will be requested)*

Scott A. Bursor
Joseph I. Marchese
Joshua D. Arisohn
Philip L. Fraietta
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
scott@bursor.com
jmarchese@bursor.com
jarisohn@bursor.com
pfraietta@bursor.com

*(Pro Hac Vice admission will be requested)*

**ATTORNEYS FOR PLAINTIFFS**