```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF PENNSYLVANIA


                              .  Case No. 5:15-cv-06325-WB
BRIAN RICHARDSON, et al       .
                              .
              Plaintiffs,     .
    vs.                       .  U.S. Courthouse
                              .  601 Market Street
VERDE ENERGY USA, INC.,       .  Philadelphia, PA 19106
                              .
              Defendant.      .  September 23, 2019
                              .  4:00 p.m.
. . . . . . . . . . . . . . . .
```

```
        TRANSCRIPT OF MOTION FOR PRELIMINARY SETTLEMENT
          BEFORE THE HONORABLE WENDY BEETLESTONE
            UNITED STATES DISTRICT COURT JUDGE
```

APPEARANCES:

For the Plaintiffs:        Berger Montague PC
                           By:  LANE L. VINES, ESQ.
                           1818 Market Street, Suite 3600
                           Philadelphia, PA  19103
                           (215) 875-4658

For the Defendant:         Eckert Seamans Cherin & Mellot LLC
                           By:  JOEL LENNEN, ESQ.
                           600 Grant Street, 44th Floor
                           Pittsburgh, PA  15219
                           (412) 566-6197



Audio Operator:            Nelson Malave, ESR


TRANSCRIBED BY:            Access Transcripts, LLC
                           10110 Youngwood Lane
                           Fishers, IN 46038
                           (855) 873-2223
                           www.accesstranscripts.com



              Proceedings recorded by electronic sound
       recording, transcript produced by transcription service.

1    (Proceedings commence at 4 p.m.)

2         THE COURT:  <u>Richardson versus Verde Energy USA, Inc.</u>

3    It's the motion for preliminary approval of settlement.  So I

4    received the briefs, read the briefs.  I'd like you to argue,

5    on the record, as to why you think this is an appropriate

6    settlement, and I'd like to -- you to specifically focus on the

7    adequacy of the relief.

8         MR. VINES:  Okay.

9         THE COURT:  Go ahead.

10        MR. VINES:  Good afternoon, Your Honor.  Lane Vines,

11   Berger Montague, for the plaintiffs and the settlement class.

12   May it please the Court, plaintiffs Brian Richardson, Michelle

13   Hunt, Jacqueline Bowser, Chris Villager (phonetic), and Donna

14   Schley have filed a motion for preliminary approval of the

15   class settlement.  The motion is unopposed by Defendant, Verde

16   Energy USA, Inc.

17        The plaintiffs have supplied the Court with the

18   settlement agreement along with the proposed preliminary

19   approval order, the notice of settlement claim form and final

20   judgment.  In accord with FRCP  23, the plaintiffs seek the

21   Court's preliminary approval of the proposed settlement so that

22   notice can be given to the settlement class.  The proposed

23   settlement follows four years of highly contested litigation.

24   The parties reached an agreement to settle this class action

25   for a $3 million cash payment to the settlement class, subject

1  to the approval of the Court.

2          The proposed settlement will resolve all claims

3  asserted in the action which arise from defendant's alleged

4  violations of the Telephone Consumer Protection Act known as

5  the TCPA.  At the time the settlement was reached, plaintiffs

6  were fully informed of the strengths and weaknesses of the

7  claims asserted, and prior to reaching the settlement,

8  plaintiffs obtained significant fact discovery, including

9  document productions and written discovery concerning Verde's

10  business practices and operations, as well as information

11  learned through depositions of Verde and its vendors.

12          Significantly, the parties reached this settlement

13  only after extensive negotiations involving an independent

14  mediator, former Chief Judge Lawrence Stangel, as well as

15  several prior mediation sessions before former Magistrate Judge

16  Diane Welsh.  The proposed settlement will benefit a settlement

17  class defined as all individuals in the United States who

18  received a call made by or on behalf of Verde Energy USA, Inc.

19  to the individual's cellular or landline telephone through the

20  use of prerecorded or artificial voice from October 16, 2013,

21  to February 14, 2019.

22          Settlement class totals approximately 366,598

23  persons.  Given the projected net settlement fund of $1,575,000

24  after deducting estimated fees, costs, service awards, as well

25  as administration costs, if and as approved by the Court, the

1  fund would be equally divided among 36,660 authorized

2  claimants.  That is assuming a 10 percent claims rate, which is

3  common in TCPA class-action settlements, thus each claimant

4  would receive a distribution of approximately $43.

5          Here, the settlement provides for a very simple

6  claims process where claim forms can be submitted by website,

7  email, fax, or U.S. mail, and claimants need only sign a form

8  provided to them and need not submit additional documentation.

9  The Third Circuit has long recognized there is a strong

10  presumption in favor of voluntary settlement agreements, and

11  this presumption is especially strong in class actions where

12  substantial judicial resources can be conserved by avoiding

13  formal litigation.

14          Settlement agreements are encouraged because they

15  promote the amicable resolution of disputes and lighten the

16  increasing load of litigation faced by federal courts.  In

17  addition, the parties may also gain significantly from avoiding

18  the cost and the risk of a lengthy and complex trial.  Here,

19  the proposed settlement will provide a tangible, invaluable

20  recovery to the settlement class members and avoid the

21  uncertainties and expense of continued litigation.

22          Moreover, the value of a settlement is squarely in

23  line with other TCPA settlements.  So for all of the reasons

24  set forth in the motion and accompanying papers, the plaintiff

25  respectfully requests that the Court preliminarily approve the

1   proposed settlement and enter the proposed preliminary approval

2   order as filed so that notice of the settlement can be given to

3   the class.

4         To answer Your Honor's question as to the adequacy of

5   relief, as we have calculated a projected net settlement fund,

6   the claim distribution would be squarely in line with a typical

7   TCPA class action.

8         THE COURT:  Well, I'm looking at the -- at Landsman &

9   Funk, which is a Third Circuit case.

10         MR. VINES:  Uh-huh.

11         THE COURT:  In that case, the -- not to say that this

12   is the -- you know, this is just what they were faced with,

13   they said:

14         "The settlement agreement allows for the statutes

15         maximum recovery of 500 per fax received and

16         retained, as well as a sliding scale down to 175 per

17         fax, depending on the number received, for those who

18         did not retain faxes but declare they received them."

19         MR. VINES:  Uh-huh.

20         THE COURT:  So those other cases that you cite are

21   district court cases outside of this circuit, whereas the

22   circuit, well, it certainly seems to be okay with the statutory

23   amount, but you haven't indicated to me that there are any

24   other cases in the Third Circuit that would suggest an amount

25   of $43, which is very low, would be appropriate.

6

1          MR. VINES:  Your Honor, we actually had a case in the

2    Eastern District just a couple -- two years ago.  It was the

3    POWERHOME litigation; the distribution in that case was

4    ultimately about $27, and, you know, that was approved by the

5    Court.  Along the same lines as, you know, what's set forth in

6    the papers here, I think in the Landsman case, rather than

7    being an actual dollar value, it was the facts of the case in

8    that situation.

9          THE COURT:  So let me just make sure I've got the

10   numbers right here.  It's a $3 million settlement.  You take

11   out $300,000 for notice, about 1 million for attorneys' fees,

12   100,000 or so for litigation expenses, and you're left with

13   about 1.6 million for distribution to 366,598 people, and you

14   calculate about a 10 percent return on that, so you get 36,660

15   potential claimants.  Is that correct?

16         MR. VINES:  That's correct, Your Honor.

17         THE COURT:  Okay.  Well -- --

18         MR. VINES:  Your Honor, if I could add, also, in a

19   circumstance such as this of not knowing what the claims rate

20   would be, I also -- we noted in the papers -- the Agarilla

21   (phonetic) case where the claims rate was actually 1 percent.

22   In a circumstance such as that, applying the settlement that we

23   have in this case, the $43 would then augment to $430.

24         THE COURT:  But you gave me that 10 percent number

25   because that was --

1              MR. VINES:  That's correct.

2              THE COURT:  As lawyers who handle these kind of cases

3    on a fairly regular basis, that is sort of the average

4    percentage of recovery or of claimants in these kind of cases.

5              MR. VINES:  It's either the average or you might

6    speak with defendants, and they might think that it's, you

7    know, higher than average, but that is what we wanted to

8    project, you know, projecting it at 10 but hoping -- or not

9    hoping, but with understanding that it could be lower.  You

10   know, whether it's at 5 percent or 8 percent, or, in the

11   Agarilla case, of 1 percent.

12             MR. LENNEN:  If I may, Your Honor?  I've spoken to

13   different claims administrators.  I think 10 percent is on the

14   extreme high end.  We're dealing with a class that goes back

15   all of the way to 2013.  We're dealing with telephone numbers,

16   many times cellphone numbers, trying to find an individual,

17   especially with a common name, that still has that number and

18   tracking them down is going to lead to probably much of a

19   less-take rate.

20             I've recently spoke to a claims administrator.  They

21   said 5 to 6 percent would be a high-take rate for these type of

22   cases when you're dealing with a six-year window and old

23   cellphone numbers, and they way people change telephone --

24   cellphone numbers, you can expect a much lower claim rate,

25   based on claims administrators, than probably 10 percent.

1          THE COURT:  So if you go to 5 percent, say, then --

2   then your view is -- or your calculation would be everyone

3   would get about 86 bucks?

4          MR. VINES:  That's correct, Your Honor.

5          MR. LENNEN:  I think it's a little bit higher than

6   that, Your Honor, but --

7          THE COURT:  Well, you said the 10 percent rate would

8   be 43, so --

9          MR. LENNEN:  Right.

10         THE COURT:  -- if you --

11         MR. LENNEN:  And a 1 percent rate would be up $430.

12         THE COURT:  Yeah.  But you -- if it's at 5 percent,

13  you just divide it in two -- or you multiply.  You multiply 43

14  by 2, which gets you to 86, if it's a 5 percent rather than a

15  10 percent rate, correct?

16         MR. LENNEN:  Yes. I guess that would be correct, Your

17  Honor.

18         THE COURT:  Are you just saying that because I'm

19  saying it, or you think --

20         MR. LENNEN:  Yeah.  Because I haven't done the math.

21  Yes, Your Honor.  I've done 1 percent and I've done percent --

22  10 percent.  I haven't done the 5 percent --

23         THE COURT:  Okay.

24         MR. LENNEN:  -- Your Honor.

25         THE COURT:  Well, so, I mean, if you look at it,

1  let's say you had negotiated 100, then per on the 10 basis and

2  the 36,660, that would have been an extra 2 million settlement.

3  If you had gone to 250, that would be probably an additional

4  8 million or so on the settlement.  Is that a fairly -- fair to

5  say?

6          MR. LENNEN:  It is, but, also, if I may, Your Honor?

7  I think there's a difference from the case you talked about and

8  with the facts cases.  Here, we're settling on the fact as to

9  whether or not someone received an improper prerecorded

10  message, and we don't believe that happened.  The messages that

11  we gave -- Verde gave were the statutorily required message.

12  We also believe that we had consents to make -- even if it was

13  the non-statutorily required message, we had consent to give

14  the message we did.

15          So I think there are more issues than the facts case

16  that we had defenses that we believed would also -- there's a

17  very strong likelihood that this class would not be certified,

18  and that the class members would walk away with zero based on

19  what we're settling on, and I think that goes to the adequacy

20  of the relief here.  Clearly, as some of the courts had -- have

21  said, you know, 43 or $86 versus no recovery is a better result

22  from this class.

23          THE COURT:  But didn't I rule on a summary judgment

24  motion, and I left something in, right?

25          MR. LENNEN:  You did because of the factual issues,

1  Your Honor.

2          THE COURT:  Right.  Right.  So -- and -- so right

3  now, we're in a position of either we go to trial or I approve

4  this settlement, correct?

5          MR. LENNEN:  That is correct, Your Honor.

6          THE COURT:  Okay.  I am not going to approve this

7  settlement.  I don't think that it satisfies the adequacy

8  prong.  I think that $43 per person is just -- and even if that

9  was moved up to $86 per person, given that there is an

10 increased concern across the country for these cellphone calls,

11 which have -- it used to be a few years ago that you did not

12 receive these kind of calls on your cellphone, and now you

13 receive them all the time, and given that there is a statutory

14 concern against these kind of calls, either cellphone or

15 landline, I just don't think that 43 is adequate.

16          And what I can do, if you would like me to, if it

17 would helpful -- help you, I will read onto the record an

18 entire opinion which will say that every other single factor

19 has been met, it's just the dollar amount that is not adequate,

20 and I'll leave that to you.  If it's -- if you want me to do

21 that, I'm happy to do that, but if you don't think it will

22 actually move the ball much, I won't do it.

23          MR. VINES:  I think it -- so if I could respond,

24 first, to the adequacy --

25          THE COURT:  Uh-huh.

1          MR. VINES:  -- issue, and then address the second

2  question that you were just asked, or the issue that you were

3  presenting, Your Honor.

4          I guess, you know, the first thing that I would point

5  to is what we set forth in our papers on page 17 and 18.

6  First, the <u>Garrich</u> (phonetic) court was quoting, in this case,

7  Seventh Circuit, but I think sentiments are similar in the

8  Third Circuit, is that the essential point here is that the

9  Court should not reject a settlement solely because it does not

10  provide a complete victory to the plaintiffs, for the essence

11  of settlement is compromise.

12          THE COURT:  But I don't think we're talking about

13  complete.  I'm not saying -- I'm not even going to willful or

14  knowing violation.

15          MR. VINES:  Uh-huh.

16          THE COURT:  It's just -- it's -- which would take us

17  up to the 1500.  I'm just going on the 500.  Complete --

18          MR. VINES:  Understood.

19          THE COURT:  -- recovery would be 500.  We're not --

20  we're nowhere close to that number.

21          MR. VINES:  Correct, Your Honor.  And then I would go

22  to page 18.  While Verde has agreed to settle, Verde is not

23  without significant defenses, including that Verde had the

24  requisite consent in accordance with the TCPA prior to making

25  calls to settlement class members.  Specifically, what that's

1  referencing is what Mr. Lennen was just referencing, which is

2  the type of claims that we're talking about are the claims that

3  were robocalled in the event that the recipient was not able to

4  speak to a live operator.

5          Mr. Lennen and his clients contend that such a

6  robocall, at that point in the transaction, was required by the

7  TCPA and somehow in a safe harbor outside of the consent

8  requirements.  We disagree with that, and that is still an

9  issue that would be a risk to be litigated if we were to go

10 forward.  Continuing, Verde did not use the TCPA actual

11 artificial prerecorded voice, as well as defense's challenges

12 to the appropriateness of class certification.

13         In a nutshell, there are several issues outside of

14 where we stand at the moment and outside of the summary

15 judgment decision that Your Honor issued previously that would

16 leave many issues of fact and law to be resolved, posing risk

17 to the settlement class and to the defendant.  As a result, we,

18 you know, are not in a position that we would be, you know,

19 getting the 500 or even near the 500, absent the sliding scale

20 of what a claims rate, you know, might be.

21         That, in practice, is the essence of settlement, and

22 that's why, you know, case law puts forth the idea that a

23 tangible settlement to the class now is better than a

24 speculative settlement down the road after trial, after

25 appeals, looking for a solvent defendant, and then actually

getting payment.  Mr. Lennen's other point as to who it is that we would be sending notice to is another difficulty in this case.  While we have the numbers that six years ago were called by the company, those numbers may have changed hands.

The data that was available at the time that the defendant made those calls was sometimes scant, incomplete.  It may require additional drilldown to try to find those persons. That is another reason why the 10 percent, you know, is on the high end.  We pushed it to make it on the high end hoping that -- to the extent we weren't able to connect with people, that we were getting as much for the class so that when we projected the $43 and it turned out less, that number would go up, but at least, you know, we would have at the 10 percent level a number that is generally accepted across the country in courts for TCPA class actions.

That's something that provides tangible, adequate recovery for the class.  It's not a situation of having coupons or some type of, you know, pennies kind of settlement.  It -- we wouldn't put forth a settlement like that, and we haven't in this case.  Instead, we've put forth a settlement that's approximately $50, which is totally in line with other cases, both in this district, as well as outside of this district.

And as I mentioned, the POWERHOME case a couple ago was another situation.  That case, I believe, when we originally filed it, was about $50, but that was with a

1   5-percent claims rate, and it doubled up to 10, and as a

2   result, it cut down to about $27, but that was still within the

3   range of reasonableness to make a fair, reasonable, and

4   adequate settlement for the class.

5          Persons who don't believe that it's fair, reasonable,

6   and adequate will be given notice.  They will be given an

7   opportunity to come to this court, either in person or through

8   mail, and either object to it or opt out.  If they do opt out

9   in a significant number of 5 percent or more, the settlement

10  may be terminated by the defendants and the litigation would

11  continue.

12          THE COURT:  Okay.  I understand.  I've heard you.

13  Are -- you want more?

14          MR. LENNEN:  Well, I was going to say, the other

15  issue, I think, that wasn't addressed is this only happens, the

16  class gets relief if this Court certifies the class.  I think

17  that there is substantial difficulties because of the consent

18  issue alone.  The only way that you can decide that is to

19  essentially listen to -- look at each consent, whether it was a

20  valid consent, because they're different; and if someone

21  revoked their consent, you're going to need to listen to

22  recordings as to whether someone or not may have revoked their

23  consent.

24          That's going to be -- need to be done, likely on an

25  individualized basis, and so if the class doesn't get

1  certified, then we're talking about the named plaintiffs

2  getting their $500 per person, and that's all that would

3  happen.  I think that what's important here is that the uphill

4  battle that we believe that plaintiff's face on having a class

5  certified from the start.

6          THE COURT:  Do I have a deadline to file or assert

7  motions?

8          MR. LENNEN:  You mean to give your order on this, the

9  preliminary --

10          THE COURT:  To provide me with a motion to certify

11  the class.  Is there a deadline for that?

12          MR. LENNEN:  No, there is not.

13          THE COURT:  Okay.  Well, I mean, as I said, I am

14  going -- I am not going to approve this preliminary -- what is

15  -- this preliminary approval of the class action settlement, so

16  -- but I am going to set a date for class-certain motions.  So

17  when would you like me to do that?  When can you get briefings

18  in?

19          MR. VINES:  So, Your Honor, could I ask one question

20  before we go to the deadline for setting additional briefing

21  and motion practice?  Would the Court be amenable to

22  supplemental briefing on the issue of the adequacy of the --

23          THE COURT:  No, I think I've heard -- I've -- you had

24  plenty of opportunity to brief it.  You had plenty of

25  opportunity to argue it here.  I'm not changing my mind on it.

16

1  So the -- your choice is to file a motion to certify, or it's

2  to go back to the negotiating table, understanding that I have

3  told you that I believe that all of the other elements have

4  been met.  It's just the adequacy has not been met.

5          So it's not a complicated negotiation.  Everything

6  else is there, and I've taken into account all of the other

7  issues, the risks, the various things under Rule 23, so you

8  know where I'm leaning on it.  You just understand, that is not

9  an amount that I will approve in a settlement.

10          MR. VINES:  And did Your Honor indicate that, an

11  amount that would be more within the Court's range of

12  reasonableness?

13          THE COURT:  Well, I think I've given you some

14  calculations that might help you.

15          MR. VINES:  Okay.  Okay.

16          THE COURT:  And certainly, if you want the

17  transcript, you can order the transcript.

18          MR. VINES:  Thank you, Your Honor.

19          THE COURT:  Okay.  Anything else?

20          MR. LENNEN:  No, Your Honor.

21          MR. VINES:  Not at this time.

22          THE COURT:  Okay.  I gave you the opportunity of me

23  to read why I think the other elements have been met.  If you

24  would like me to do that, I will do that.  If you don't think

25  it would be useful, I won't.

1                MR. LENNEN:  No.  I think --

2                MR. VINES:  I would ask that you go ahead and --

3                MR. LENNEN:  No.  Go ahead.

4                MR. VINES:  I would ask that you go ahead and put

5       those into the record.

6                THE COURT:  Okay.  Have a seat.

7                The plaintiffs have submitted an unopposed motion for

8       preliminary approval of their class action settlement.  The

9       plaintiffs allege that defendants violated the Telephone

10      Consumer Protection Act by making prerecorded calls.  The TCPA

11      prohibits the use of an artificial or prerecorded voice in

12      making non-emergency calls to cellphones without prior express

13      consent from the recipients.  The statute provides a private

14      right of action for each violation.

15               A consumer may recover $500 in damages and up to

16      $1,500 if a court finds that the defendant willfully or

17      knowingly violated the TCPA.  On November 2015, the plaintiffs

18      filed their class action complaint.  Defendants denied

19      liability in their answer and filed for summary judgment.  In

20      December 2018, defendants moved for summary judgment, which

21      this Court granted in part.  The parties then moved to

22      mediation.

23               Though the initial mediation was unsuccessful, the

24      parties accepted a compromise settlement in April of 2019.  The

25      proposed settlement provides for defendant to pay 3 million to

1 an escrow account.  The escrow funds are to be used to provide

2 notice to potential claimants up to $300,000 to satisfy claims

3 in equal shares to all approved claimants, and to compensate

4 class counsel a third of the settlement fund and up to $100,000

5 in litigation expenses.

6       Potential claimants are to be identified from

7 defendant's business records.  The proposed settlement defines

8 the class as all individuals in the United States who received

9 a call made by or on behalf of Verde Energy USA, Inc., to the

10 individual cellular or landline telephone through the use of a

11 prerecorded or artificial voice from October 16, 2013, to

12 February 14, 2019.

13       In a connection with preliminary approval of the

14 settlement, plaintiffs request the following from the Court:

15       Preliminarily certify the settlement class for

16 purposes of the proposed settlement;

17       Preliminarily approve the settlement on the terms set

18 forth in the settlement agreement;

19       Approve the proposed form and content of the notice

20 and claim form;

21       Approve the proposed procedures for dissemination of

22 the notice in the manner set forth in the preliminary approval

23 order;

24       Appoint Angeion Group, LLC, to serve as the

25 settlement administrator;

1          Preliminarily appoint, for settlement purposes only,

2    Shanon J. Carson and Lane L. Vines of Berger Montague, PC; W.

3    Craft Hughes and Jarrett L. Ellzey of Hughes Ellzey, LLP;

4    Joshua Arisohn of Bursor & Fisher, PA; and Ari Marcus of Marcus

5    & Zelman, LLC, to serve as class counsel;

6          Establish the date of the final approval hearing, and

7    establish deadlines for the settlement class members to submit

8    the claim forms, request exclusion from the settlement class,

9    or make objections to the settlement or application for

10   attorneys' fees, reimbursement of litigation expenses, and

11   Plaintiff's services award, and for filing papers in support of

12   final approval of the settlement.

13          "The Third Circuit has recognized a strong

14   presumption in favor of voluntary settlement arguments," and

15   that's the Ehrheart case, 609 F.3d 590, pinpoint to 594:

16              "This presumption is especially strong in class

17              actions and other complex cases where substantial

18              judicial resources can be conserved by avoiding

19              formal litigation."

20          That's also the Ehrheart case quoting In re: General

21   Motors Corporation Pick-up Truck Fuel Tank Production, a

22   product liability litigation.  That's 55 F.3d 768, pinpoint

23   784.

24              "However, approval is not automatic, and plaintiffs

25              must demonstrate that their settlement comports with

1 the requirements of Federal Rule of Civil Procedure

2 23(e).  According to 23(e), the parties must provide

3 the Court with information sufficient to enable it to

4 determine whether to give notice of the proposal,

5 i.e., the proposed settlement to the class.

6 Specifically, the parties must prove that the Court

7 will likely be able to approve the proposal under

8 Rule 23(e)(2) and to certify the class for purposes

9 of judgment on the proposal.

10 "FRCP 23(a) establishes numerosity, commonality,

11 typicality, and adequacy of representation as

12 prerequisites for certifying a class.

13 In re: General Motors, at 796.

14 "If those requirements are met, a district court must

15 then find that the class fits within one of the three

16 categories of class actions in Rule 23(b)," that's In re:

17 Community Bank of North Virginia, 622 F.3d 275, pinpoint 291,

18 that's of the case.

19 One such category of class actions and the category

20 asserted by plaintiffs here is 23(b)(3).  Under 23(b)(3):

21 "Common questions of law or fact must predominate

22 over any questions effecting only individual members

23 and the class action must be superior to other

24 available methods for fairly and effectively

25 adjudicating the controversy."

1        Here, the requirements of both 23(a) and (b) are

2   likely satisfied.  Numerosity, there is no minimum number of

3   members needed for a suit to proceed to the class action, but

4   generally, if the named plaintiff demonstrates that the

5   potential number of plaintiffs exceeds 40, the first prong of

6   Rule 23(a) has been met.  Here, the class is estimated at

7   366,598, so numerosity has been met.

8        With respect to commonality, commonality requires

9   common questions of law or facts to the class.  Here,

10  plaintiffs assert the same claims based on the same facts for

11  all proposed class members, i.e, that the defendant engaged in

12  unlawful marketing practices by making calls to settlement

13  class members telephones through the use of a prerecorded or

14  artificial voice message without obtaining the requisite prior

15  consent in violation of the TCPA.  Commonality is therefore

16  likely satisfied.

17       To satisfy typicality, the claims or defenses of the

18  representative parties must be typical of the claims or

19  defenses of the class.  Here, plaintiffs allege that they

20  received the same type of unwanted calls as the potential class

21  members, therefore, typicality has likely been satisfied.

22       Turning to adequacy of representation, Rule 23(a)(4)

23  is adequacy requirement has two components designed to ensure

24  that absentee's interests are fully pursued.  First, the

25  adequacy inquiry tests the qualifications of the counsel to

1 represent the class.  The second component of the adequacy

2 inquiry seeks to uncover conflicts of interest between named

3 parties and the class they seek to represent.  Here, no issue

4 has been raised concerning counsel, neither to there appear to

5 be conflicts between plaintiffs and the potential class.

6        The plaintiffs and the potential class allegedly

7 suffered the same harms, and while the proposed settlement

8 provides distribution of the settlement funds based on the

9 number of claims made, it also provides for a comprehensive

10 notice to the potential claimants.  There do not appear to be

11 adequacy issues.

12        Turning to predominance.  Predominance measures

13 whether the class is sufficiently cohesive to warrant

14 certification.  Here, all potential class members were subject

15 to Defendants alleged, unauthorized, automated calls, and the

16 plaintiff do not raise any claims unique to themselves,

17 therefore, predominance is likely satisfied.

18        With respect to ascertainability, in addition for

19 23(b)(3) classes, the class must be currently and readily

20 ascertainable based on objective criteria.  Here, plaintiffs

21 have access to business records detailing who received the

22 unwanted calls and when, so the potential class is

23 ascertainable.

24        I do have some concerns having heard what I've heard

25 today from defendant that there will be some difficulty finding

1  the numbers and associating those telephone numbers with

2  individuals, but I assume that what was stated in the briefs,

3  which is, these folks are ascertainable, is, in fact, the case,

4  and will therefore find that that prong is likely satisfied.

5         Superiority requires a class action to be superior to

6  other means of adjudication.  Though the TCPA does provide a

7  private right of action, courts in this circuit have determined

8  that class actions are superior to individual actions in the

9  TCPA context.  As the Court explained in AL Industries, Inc.

10 versus P. Tripolini, Inc. (phonetic), Rule 23(b)(3) itself

11 defines superiority in terms of efficiency, and a class action

12 is more efficient than processing hundreds of thousands of

13 individual claims.

14        Furthermore, the Third Circuit has suggested that

15 TCPA class actions have an equal, if not greater, deterrent

16 effect on potential TCPA violators that individual suits, in

17 addition to the benefit provided by efficiency, and that is the

18 Landsman case, 640 F.3d 72, pinpoint 95, Third Circuit 2011.

19 Here, a class action is likely the superior method of

20 adjudicating claims because of the hundreds of thousands of

21 violations at issue.

22        Once the appropriateness of a class action has been

23 established, the court should consider the rest of the factors

24 outlined in 23(e), namely, if the proposal would bind the class

25 members, the court may approve it only after a hearing and only

1   on finding that it is fair, reasonable, and adequate after

2   considering whether the class representatives and class counsel

3   have adequately represented the class, B, the proposal was

4   negotiated at arm's length, C, the relief provided for the

5   class is adequate, taking into account the costs, risks, and

6   delay of trial and appeal.

7           The effectiveness of any proposed method of

8   distributing relief to the class, including the method of

9   processing class member claims.  The terms of any proposed

10  award of any attorneys' fees, including timing of payment and

11  any agreement required to be identified under Rule 23(e)(3),

12  and, finally, the proposal treats class members equitably

13  relative to each other.

14          To aid in this determination, the parties seeking

15  approval must file a statement identifying any agreement made

16  in connection with the proposal.  Furthermore, the Third

17  Circuit has articulated the following non-exclusive list of

18  factors for courts to consider when determining an adequacy of

19  settlement:

20          The complexity, expense, and likely duration of the

21  litigation;

22          The reaction of the class to the settlement;

23          The stage of the proceedings and the amount of

24  discovery completed;

25          The risks of establishing liability;

1           The risks of establishing damages;

2           The risks of maintaining the class action through the

3   trial;

4           The ability of the defendants to withstand a greater

5   judgment;

6           The range of reasonableness of the settlement fund in

7   light of the best possible recovery;

8           The range of reasonableness of the settlement funds

9   to a possible recovery in light of all the attendant risks of

10  litigation.

11          Here, there are no allegations that class counsel has

12  been adequate, and it appears to me that they are.  The

13  proposed settlement was negotiated at arm's length with a

14  mediator, and the proposed class members are to be treated

15  equitably in that the settlement funds are to be distributed in

16  equal shares.  The -- there has been on information submitted

17  to me with respect to the ability of the defendants to

18  withstand a greater judgment, in fact, I find no specific

19  information about how -- whether this settlement would impact

20  or how it would impact on their bottom line.

21          I turn to the amount of the recovery.  According to

22  the plaintiffs, the projected recovery per claimant is

23  comparable to that in other TCPA cases, and they cite a

24  Northern District of Illinois case which collects other cases,

25  but other TCPA cases in this circuit appear to have provided

26

greater relief.  In <u>Landsman</u>, for example, the settlement
agreement allows for the statutory maximum recovery of $500 per
fax received and retained, as well as a sliding scale down to
$175 per fax, depending on the number received, for those who
did not retain faxes but declare that they received them.

       In this case, if I look at the amount, although the
amount of the settlement is $3 million, 300,000 or so is taken
out for notice, $1 million is taken out for attorneys' fees,
about $100,000 is taken out for litigation expenses, which
leaves for the class $1.6 million.  Although there are the
calculation that there 366,598 potential class members, the
parties agree that 10 percent as high number are likely to be
claimants, which takes us down to 36,660.

       By that calculation, each member of the class would
get $43.  When I compare this to the $500 that is receivable
under the statute, not taking into account the 1,500 which
would be if there was a willing and knowing violation, that
number is a far cry from the $500.  Now, while obviously there
are risks associated with litigating this case further, the
Court is not a rubberstamp, and simply because there is a
settlement does not mean that the Court should automatically
approve the settlement.

       In looking at the numbers, I just -- I did some
back-of-the-envelope calculations.  If each of the 36,660
potential claimants were to receive $100, that would be an

1  increase in $2 million.  At the top end of that, if they were

2  to -- at the top end of my calculations, if they were to

3  receive 250, that would be $9,165,000, which would be at the

4  high end of a $7 million increase in the settlement.

5       Those numbers I just throw out there simply because I

6  have calculated them, but certainly the range is something that

7  should be considered in reaching a settlement in this case, and

8  I'm not suggesting that the high end of the range or the low

9  end of the range is appropriate.  I'm just saying that that

10  range is something that I, given the facts of this case, would

11  be more interested in approving than the current rate of --

12  which would give $43 per person on the numbers provided to me.

13       Accordingly, I will deny the motion.  I do note that

14  in the proposed order for final approval of the settlement,

15  plaintiffs state that the Court shall retain jurisdiction over

16  the administration of the settlement.  That's not something I

17  normally do, but in a class-action context, it may be

18  appropriate, but that is something that, if that is what you

19  would like me to do, you have to argue for it in any subsequent

20  motion.

21       So with that, I think the next phase is I should set

22  a deadline, given that discovery is over and summary judgment

23  has been decided, I should set a date for a motion for class

24  certification.  So what would be -- and I'm open to the parties

25  telling when they think a good date for that would be.

1          MR. VINES:  So, Your Honor, just to address a couple

2    of the issues, there -- the first one, we, the parties, reached

3    this settlement during the course of discovery.  I would like

4    to at least reserve the right -- or at least the right to

5    request additional discovery if this case is going to proceed

6    forward.

7          THE COURT:  Well, wait a minute.  Is fact discovery

8    over, according to the deadlines, the scheduling order?

9          MR. VINES:  According to the scheduling order, yes.

10         THE COURT:  Well, then, there is no more discovery.

11         MR. VINES:  Okay.  As far as the -- setting the

12   deadline for the class certification, I would at least request

13   two things.  One, I'd like to get the transcript so that we

14   could review that.

15         THE COURT:  Why would that impact on the deadline?

16         MR. VINES:  Because Your Honor just made --

17         THE COURT:  Ah, okay.

18         MR. VINES:  -- a ruling regarding --

19         THE COURT:  So you want at least the length of time

20   it would get you to the -- it would get you the transcript plus

21   some?

22         MR. VINES:  Yes, Your Honor.

23         THE COURT:  Mr. Malave, when -- how long does it take

24   to get a transcript of the ESR?

25         THE CLERK:  Typically, there's the 30-day turnaround,

1  a week to 7-day turnaround?

2          THE COURT:  Well, no.  We'll give them 30 days.  We

3  won't put an express deadline on that.

4          Okay.  So we're starting off with 30 days --

5          MR. VINES:  Okay.

6          THE COURT:  -- and then we're adding from there.

7          MR. VINES:  I would ask for 60 days to prepare the

8  class certification.

9          THE COURT:  Okay.

10         And that's okay with you?

11         MR. LENNEN:  For them to prepare their class cert

12  motion?

13         THE COURT:  Yeah.

14         MR. LENNEN:  Yes, Your Honor.  That's --

15         THE COURT:  Okay.  So that's 90 days from today, and

16  I'll issue an order.  And how long would you like to respond?

17         MR. LENNEN:  90 days, Your Honor.

18         THE COURT:  90 days?

19         MR. LENNEN:  Yes.

20         THE COURT:  And would you like a reply?

21         MR. VINES:  Yes, we would, Your Honor.

22         THE COURT:  How long would -- you're not getting 90

23  days for a reply, so give me another different -- another

24  number.

25         MR. VINES:  Could we have 30 days, Your Honor?

1          THE COURT:  You can have 30 days.

2          Okay.  I will issue orders on the motion and, also, a

3    scheduling order, and we'll take it from there.

4          MR. VINES:  Okay.  Your Honor, could I just make a --

5    get a clarification?  As to what Your Honor read into the

6    record just a few moments ago, I'm just trying to understand,

7    are those findings of the Court?  Is that a preliminary ruling

8    on class certification?

9          THE COURT:  No.  With respect to the numbers, those

10   are not findings of the Court and they're not a preliminary

11   ruling.  The numbers, right?

12         MR. VINES:  Oh, no.  No.

13         THE COURT:  The numbers I provided you are not --

14         MR. VINES:  No.

15         THE COURT:  -- a decision of the Court, and they are

16   not in -- they're just by way of providing you with guidance.

17         MR. VINES:  Understood.

18         THE COURT:  With respect to everything I read --

19         MR. VINES:  Yes.

20         THE COURT:  -- before then, that is an opinion on the

21   motion.  It is an oral opinion from the bench on the motion.

22   So those are the -- as if I had written it and had signed it,

23   that is the opinion.  It's -- it will -- it is now -- rather

24   than being something that I will file on ECF, the transcript

25   will be on ECF, and that is -- that will be the opinion.

1           MR. VINES:  So --

2           THE COURT:  In other words, if you appeal it, you

3  look to the opinion in the transcript.

4           MR. VINES:  Actually, Your Honor, I was looking to it

5  more in the sense of understanding how much reliance to place

6  on it in connection with a motion for class certification.

7           THE COURT:  You can place reliance on it.

8           MR. VINES:  Thank you, Your Honor.

9           MR. LENNEN:  But, Your Honor, this was done for the

10 purpose of the settlement.  I assume that now that this

11 settlement is not going to go forward, they -- it's not

12 something they can rely upon for class cert, because this was

13 all done under the veil of a settlement for settlement purposes

14 only --

15          THE COURT:  So I presume he's going to argue that

16 because I've made it -- made those findings in this preliminary

17 approval that they should apply in the broader context, and

18 you're going to argue no.

19          MR. LENNEN:  Correct.

20          THE COURT:  And he's going to have to justify why he

21 is relying on -- why he thinks its appropriate to rely on the

22 findings and the motion for a preliminary approval of

23 settlement, and you're going to argue why it is not

24 appropriate.  So it's just another battle that you have to

25 have, but this is an opinion.  It's -- and it's -- you have to

1  take it in the context of the motion.  So obviously there will

2  be arguments on both sides as to the weight of the findings in

3  this particular opinion on this particular motion.

4              MR. LENNEN:  You're saying contested motion.

5              THE COURT:  This uncontested motion, right.  Right.

6              MR. LENNEN:  Thank you.

7              THE COURT:  So I'm -- I expect that you will be

8  arguing that vigorously.

9              MR. LENNEN:  Thank you.

10             THE COURT:  Okay?

11             MR. LENNEN:  Yes.

12             THE COURT:  Anything else?

13             MR. VINES:  No, Your Honor.

14             THE COURT:  Thank you.

15             MR. VINES:  Thank you, Your Honor.

16             THE CLERK:  All rise.

17        (Proceedings concluded at 4:43 p.m.)

18                        *  *  *  *  *

19

20

21

22

23

24

25

**C E R T I F I C A T I O N**

I, J. Marie Moran, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


_/s/ J. Marie Moran_____

J. MARIE MORAN, AAERT NO. 677   DATE:  October 3, 2019

ACCESS TRANSCRIPTS, LLC




**C E R T I F I C A T I O N**

I, Lisa Luciano, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


_____

LISA LUCIANO, AAERT NO. 327   DATE:  October 3, 2019

ACCESS TRANSCRIPTS, LLC