**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRIAN RICHARDSON, *et al.*, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>VERDE ENERGY USA, INC.,<br><br>    Defendant. | No.: 5:15-cv-06325-WB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES,**
**<u>AND SERVICE AWARD FOR PLAINTIFFS</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 3

III.  ARGUMENT ................................................................................................ 8

    A.   The Requested Attorneys' Fees Should Be Granted ............................. 8

        1.   Plaintiffs' Counsel Are Entitled to an Award from the Common Fund.... 8

        2.   The Requested Fee Is Fair and Reasonable ............................................. 10

            a)   The Size of the Fund Created and Number of Persons Benefitted... 10

            b)   The Presence or Absence of Substantial Objections ........................ 11

            c)   The Skill and Efficiency of the Attorneys Involved ........................ 12

            d)   The Complexity and Duration of the Litigation .............................. 13

            e)   The Risk of Nonpayment .................................................................. 16

            f)   The Amount of Time Devoted by Plaintiffs' Counsel ...................... 17

            g)   The Awards in Similar Cases ............................................................ 19

            h)   The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups ........................................... 20

            i)   The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement ................. 20

            j)   Any Innovative Terms of Settlement ................................................ 21

    B.   Plaintiffs' Counsel's Expenses Are Reasonable And Should Be Reimbursed ... 21

    C.   Plaintiffs Should Receive The Requested Service Award ................................. 22

IV.   CONCLUSION ............................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ..................................................................................... 20

*Alexander v. Wash. Mut., Inc.*,
    No. 07-cv-4426, 2012 U.S. Dist. LEXIS 171611 (E.D. Pa. Dec. 4, 2012) .............................. 11

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................ 7

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ......................................................................... 19

*Bredbenner v. Liberty Travel, Inc.*,
    No. 09-cv-905, 2011 U.S. Dist. LEXIS 38663 (D.N.J. Apr. 8, 2011) ..................................... 21

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................................................. 12

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ................................................................................ 16

*Dewey v. Volkswagen Aktiengesellschaft*,
    558 Fed. Appx. 191 (3d Cir. 2014) .............................................................................. 7

*Gates v. Rohm & Haas Co.*,
    265 F.R.D. 208 (E.D. Pa. 2010) ................................................................................ 12

*Gehrich v. Chase Bank* U.S.,
    No. 12-cv-5510, 2016 U.S. Dist. LEXIS 26184 (N.D. Ill. Mar. 2, 2016) .............................. 16

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) ........................................................................ 9, 11, 12, 13

*Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) .................................................................................. 14

*In re AT&T Corp. Secs. Litig.*,
    455 F.3d 160 (3d Cir. 2006) .................................................................................... 7, 8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    792 F. Supp. 2d 1028 (N.D. Ill. 2011) ........................................................................ 21

*In re ATI Techs., Inc. Secs. Litig.*,
    No. 01-cv-2541, 2003 U.S. Dist. LEXIS 7062 (E.D. Pa. Apr. 28, 2003) ................................. 14

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ................................................................. 10, 21

*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) ............................................................................... 7

*In re Currency Conversion Fee Antitrust Litig.*,
  MDL No. 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) .............................. 14

*In re Diet Drugs Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) ............................................................................ 9, 17

*In re Fasteners Antitrust Litig.*,
  No. 08-MD-1912, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014) ............................................. 18

*In re Flonase Antitrust Litig.*,
  951 F. Supp. 2d 739 (E.D. Pa. 2013) .................................................................... 11

*In re Ikon Office Solutions, Inc. Secs. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ....................................................................... 11, 19

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ........................................................................... 15, 17

*In re Linerboard Antitrust Litig.*,
  MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ................................. 19

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ............................................................................ 13

*In re Oracle Corp. Secs. Litig.*,
  No. 01-cv-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) ................................... 14, 17

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
  310 F.R.D. 300 (E.D. La. 2015) ......................................................................... 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................................... 9, 17

*In re Ravisent Techs., Inc. Sec. Litig.*,
  No. 00-cv-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................. 18

*In re Rite Aid Corp. Secs. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ........................................................................ 8, 15, 17

*In re Safety Components Int'l Secs. Litig.*,
  166 F. Supp. 2d 72, 108 (D.N.J. 2001) .................................................................. 20

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*,
  288 F.R.D. 445 (C.D. Cal. 2013) ........................................................................ 12

*In re ViroPharma Inc. Secs. Litig.*,
   No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ................................. 13

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................................ 10, 21

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*,
   No. 08-cv-3610 (CLW), 2015 U.S. Dist. LEXIS 64987 (D.N.J. May 18, 2015) *aff'd*,
   639 Fed. Appx. 880 (3d Cir. 2016) ........................................................................ 8, 18, 19, 22

*Martin v. Foster Wheeler Energy Corp.*,
   No. 06-cv-0878, 2008 U.S. Dist. LEXIS 25712 (E.D. Pa. Mar. 31, 2008) ............................. 15

*Meijer, Inc. v. 3M*,
   No. 04-cv-5871, 2006 U.S. Dist. LEXIS 56744 (E.D. Pa. Aug. 15, 2006) ............................. 22

*Montoya v. PNC Bank, N.A.*,
   No. 14-cv-20474-GOODMAN, 2016 U.S. Dist. LEXIS 50315 (S.D. Fla. Apr. 13, 2016) ...... 12

*Moore v. Comcast Corp.*,
   No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929 (E.D. Pa. Jan. 24, 2011) ..................................... 9

*Petruzzi's Inc. v. Darling-Delaware Co.*,
   983 F. Supp. 595 (M.D. Pa. 1996) ........................................................................................... 7

*Reinhart v. Lucent Techs., Inc.*,
   327 F. Supp. 2d 426 (D.N.J. 2004) ................................................................................... 15, 16

*Rose v. Bank of Am. Corp.*,
   No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ............... 10

*Saini v. BMW of North America, LLC*,
   No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242 (D.N.J. May 21, 2015) ..................... 14

*Schuler v. Meds. Co.*,
   No. 14-cv-1149 (CCC), 2016 U.S. Dist. LEXIS 82344 (D.N.J. June 24, 2016) ..................... 17

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ...................................................................................... 19

*Stoner v. CBA Info. Servs.*,
   352 F. Supp. 2d 549 (E.D. Pa. 2005) ...................................................................................... 16

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2012) .................................................................................................... 21

*Tavares v. S-L Distrib. Co.*,
   No. 13-cv-1313, 2016 U.S. Dist. LEXIS 57689 (M.D. Pa. May 2, 2016) ............................... 21

*Turner v. Gen. Elec. Co.*,
   No. 05-cv-186-FTM-99DNF, 2006 U.S. Dist. LEXIS 65144 (M.D. Fla. Sept. 13, 2006) ....... 12

*Vandervort v. Balboa Capital Corp.*,
  8 F. Supp. 3d 1200 (C.D. Cal. 2014) ................................................................ 19, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005)................................................................................. 8

**Statutes**

47 U.S.C. § 227.......................................................................................... 1, 4, 15

**Rules**

FED. R. CIV. P. 23 ............................................................................................. 5, 7

**Other Authorities**

MANUAL FOR COMPLEX LITIG., FOURTH, § 14.121, 2004 WL 258734 ........................................ 12

REPORT OF THE THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES
(Oct. 8, 1985), 108 F.R.D. 237, 237 (1985)............................................................ 7, 20

Plaintiffs Brian Richardson, Michelle Hunt, Jacqueline Bowser, Kris Villiger, and Donna Schley ("Plaintiffs"), through their undersigned counsel, respectfully submit this Memorandum of Law in support of Plaintiffs' Counsel's Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Service Awards to Plaintiffs.[1]

## I.   <u>INTRODUCTION</u>[2]

Plaintiffs' Counsel have achieved a guaranteed non-reversionary cash settlement of $3 million plus an additional $2 million so that there will be a pay-out to Authorized Claimants of at least $100 each. This is an excellent recovery for the Settlement Class under the circumstances of this case. The contingent risks and the many obstacles to any recovery included substantial defenses to liability and damages for the claims asserted against Defendant Verde Energy USA, Inc. ("Defendant" or "Verde") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

This case has encompassed over four years of hard-fought litigation, and significant additional risks and hurdles would have been faced by Plaintiffs on a contested motion to certify a class of affected persons and as to liability generally. Among other defenses, Verde would argue that it had the requisite consent, in accord with the TCPA, prior to making calls to Settlement Class Members, and that it did not use a TCPA-actionable artificial or prerecorded voice. The Settlement offers significant advantages over the continued prosecution of this case. Here, the participating

---

[1] Capitalized terms not otherwise defined have the meaning set forth in the Parties' Amended Stipulation and Agreement of Settlement dated December 19, 2019 (the "Settlement Agreement" or "Settlement") filed previously with the Court. *See* Dkt. 134-1.

[2] Defendant consents, for settlement purposes only, to the relief requested herein, but not to the allegations in the Complaint or Plaintiffs' arguments regarding those allegations as summarized herein.

Claimants will receive significant and immediate financial compensation and will avoid the risks and uncertainties inherent in continued litigation.

As demonstrated below and in Plaintiffs' accompanying brief in support of final approval of the Settlement, the Settlement is not only in line with other TCPA settlements across the country, but is anticipated to deliver benefits far in excess of many such settlements.

In consideration of the terms of the Settlement Agreement and of Plaintiffs' Counsel's work on behalf of the Settlement Class, including all additional work that will continue through the completion of the settlement administration process, the four (4) undersigned law firms comprising Plaintiffs' Counsel collectively request: (a) an award of attorneys' fees in the amount of one-third (1/3) of the $3 million non-reversionary cash Settlement Amount (*i.e.*, $1,000,000); (b) reimbursement of their out-of-pocket expenses up to $100,000; and (c) a service award of $5,000 for each of the five named Plaintiffs in recognition of their efforts in this litigation.

The requested attorneys' fee is in accord with percentage fee awards in other class action cases in this Circuit and elsewhere, and a lodestar cross-check confirms that the requested fee represents a current multiplier of approximately 0.78 of Plaintiffs' Counsel's collective current lodestar of approximately $1,282,332.50 relating to the 2,049.10 hours worked on this case through May 4, 2020.[3] Plaintiffs' Counsel's lodestar is expected to increase between the date of this motion and the final conclusion of this case, which will result in a further ***negative*** multiplier for Plaintiffs' Counsel in this case.

As set forth in the supporting Declaration of Andy Morrison on behalf of the Settlement Administrator, Angeion Group, LLC ("Morrison Decl."), the Notice of Settlement was mailed to Settlement Class Members on February 13, 2020. Vines Decl., Ex. 5, Morrison Decl. at ¶ 7.

---

[3] *See* Declaration of Lane L. Vines ("Vines Decl."), filed herewith, at ¶¶ 36-37.

Pursuant to the Court's Preliminary Approval Order, the Settlement Class Members had 60 days from that mailing, or until April 13, 2020, to file a Claim Form; request exclusion from the Settlement; or object to the Settlement. Dkt. 136 at ¶ 14. As of today, and as detailed further below, the Settlement Administrator has received 19,011 Claim Forms, 26 requests for exclusion, and *zero* objections.[4] Morrison Decl. at ¶ 19. Thus, it is clear that the Settlement has been well received by the Settlement Class.

Plaintiffs' Counsel undertook substantial contingent risk in litigating this Action on behalf of the Settlement Class. There was a real and distinct possibility of no recovery at all. Given the many risks assumed, the complexity and amount of work involved, and the skill and expertise required in this class action, Plaintiffs' Counsel respectfully request that the Court approve the requested attorneys' fees, expenses, and modest service awards for the Settlement Class Representatives.

## II.   FACTUAL BACKGROUND

On November 25, 2015, Plaintiffs Brian Richardson and Michelle Hunt filed a Class Action Complaint (Dkt. 1) against Verde in this Action on behalf of a nationwide class for violation of the TCPA. Jacqueline Bowser was added as a named plaintiff in this Action via an Amended Class Action Complaint filed on February 26, 2016 (Dkt. 15), and Kris Villiger and Donna Schley were added as named plaintiffs via a Consolidated Amended Class Action Complaint filed on November 1, 2017 (Dkt. 61). Vines Decl. at ¶ 8.

The TCPA prohibits the use of "an artificial or prerecorded voice" in calling cellular telephones for non-emergency purposes without "prior express consent" from the recipient of the calls. 47 U.S.C. § 227(b)(1). The statute provides a private right of action; for each violation, a

---

[4] Notably, 18 of the requests for exclusion were made through a single law firm, Lemberg Law.

consumer may recover $500 in damages and up to $1,500 if a "court finds that the defendant willfully or knowingly violated" the TCPA. 47 U.S.C. § 227(b)(3). Plaintiffs allege that Defendant violated the TCPA by calling the cellular telephones of Plaintiffs and the other Settlement Class Members using an artificial or prerecorded voice for purposes of telemarketing without obtaining the requisite prior express consent of the persons called. Vines Decl. at ╠ 9.

On January 29, 2016, Defendant filed a motion to dismiss plaintiffs' initial complaint (Dkt. 7) and a motion to stay the litigation (Dkt. 7). On February 26, 2016, plaintiffs opposed the motion to stay (Dkt. 14). In light of plaintiffs' amended complaint, the Court denied as moot Defendant's motion to dismiss. On March 3, 2016, Defendant filed a motion to dismiss plaintiffs' amended complaint (Dkt. 17), and on April 8, 2016, plaintiffs filed their opposition (Dkt. 19). By Order entered on April 25, 2016 (Dkt. 22), the Court denied Defendant's motion to stay. On December 2, 2016, the Court held a telephone status conference with counsel for the Parties (Dkt. 24). By Order entered on December 19, 2016 (Dkt. 26), the Court denied Defendant's motion to dismiss, with the exception of plaintiffs' claim for statutory fees under the TCPA. On January 13, 2017, Defendant filed its Answer (Dkt. 28) to the amended complaint. Vines Decl. at ╠ 10.

Beginning in January 2017, following motion practice on the pleadings, plaintiff began formal discovery by propounding requests for production and interrogatories on Defendant. The Parties then held a Rule 16 conference and exchanged Initial Disclosures pursuant to FED. R. CIV. P. 26(a)(1), and the Court held an interim pretrial conference on February 24, 2017 (Dkt. 33). Vines Decl. at ╠ 11.

On March 10, 2017, the Parties filed a stipulation and proposed order to stay the litigation pending mediation (Dkt. 34), which the Court entered on March 17, 2017 (Dkt. 35). In agreeing to mediate, the Parties retained the Honorable Diane M. Welsh, U.S. Magistrate Judge for the Eastern

District of Pennsylvania (Retired) to serve as the mediator. Vines Decl. at ‖ 12. The Parties drafted a confidentiality stipulation that the Court entered as a Protective Order (Dkt. 36), and Defendant produced documents, interrogatory responses, and other information relevant to plaintiffs' claims. In advance of mediation, Plaintiffs prepared a detailed mediation statement and reply mediation statement, which set forth the legal and factual basis of their claims. On May 4, 2017, Judge Welsh conducted a full day mediation session between counsel for the Parties and held open the mediation for additional discussions. Vines Decl. at ‖ 12. On May 11, 2017, the Parties submitted a Joint Report (Dkt. 37) to the Court to advise as to the status of the mediation, and by Order entered May 18, 2017 (Dkt. 38), the Court extended the stay of litigation until July 20, 2017. Plaintiffs received additional discovery from Defendant and prepared a supplemental mediation statement. On July 13, 2017, Judge Welsh conducted a second full day mediation session with the Parties, but unfortunately, these sessions did not result in a settlement. Vines Decl. at ‖ 12.

In the summer and fall of 2017, the Parties engaged in additional discovery. plaintiffs received additional document productions and conducted the depositions of Defendant and several of its telemarketing vendors. Plaintiffs also successfully opposed a protective order filed by Defendant to resist certain of that discovery (Dkt. 64). During that time, plaintiffs also retained an expert who prepared a report with regard to certain technical issues concerning the TCPA claims asserted. In response to Plaintiffs' Consolidated Amended Class Action Complaint, Defendant filed on November 15, 2017 its Answer (Dkt. 70), denying all liability with respect to the claims alleged, among other things. Vines Decl. at ‖ 13.

On December 4, 2017, Defendant filed a motion for partial summary judgment (Dkt. 73) and a motion to strike class allegations (Dkt. 74). On December 22, 2017, Plaintiffs filed their opposition to both motions (Dkt. 81, 82), and thereafter, Defendant filed reply papers. In the

months that followed, Plaintiffs and Defendant filed supplemental authority in support of their respective positions (Dkts. 96-103).[5] On December 19, 2018, the Court entered an Order (Dkt. 108) granting in part and denying in part Defendant's motion for partial summary judgment. That ruling dismissed Plaintiffs' claims as to Defendant's alleged use of an automatic telephone dialing system ("ATDS"). Vines Decl. at ⁋ 14.

On February 26, 2019, the Court held a pretrial conference to address case management issues (Dkt. 116). On March 29, 2019, Plaintiffs filed a Second Amended Class Action Complaint (Dkt. 122) to conform the allegations to the Court's ruling on summary judgment, and on April 12, 2019, Defendant filed its Answer thereto (Dkt. 123). Vines Decl. at ⁋ 15.

In the Spring of 2019, the Parties again agreed to mediate and retained the Honorable Lawrence F. Stengel, the former Chief U.S. District Judge for the Eastern District of Pennsylvania (Ret.) to serve as the mediator (the "Mediator"). Vines Decl. at ⁋ 16. On April 15, 2019, Judge Stengel conducted a full day mediation session, and at the conclusion of that session, the Parties accepted the Mediator's compromise settlement proposal subject to the negotiation of a definitive settlement agreement and the approval of the Settlement by the Court in accordance with FED. R. CIV. P. 23. *Id.* That agreement provided for a $3 million non-reversionary settlement fund, and on August 16, 2019, Plaintiffs filed a motion to preliminarily approve that proposed class action settlement (Dkt. 125). *Id.*

During the hearing on September 23, 2019, the Court considered the Parties' proposed settlement and ruled that it was not sufficient in terms of the adequacy of relief, although the Court found that all other criteria for settlement approval were met. Dkt. 132, Tr. at 10:6-22; *see also* Tr.

---

[5] During the pendency of these motions, Chief Judge Lawrence Stengel, who had presided over this case since its inception retired, and the case was transferred to District Judge Wendy Beetlestone (Dkt. 105).

8:25 to 9:2; 26:14 to 27:12. The Parties heard and appreciated the Court's concerns and returned to the negotiating table to address them. Vines Decl. at ₧ 17.

After significant additional negotiations, the Parties agreed upon an Amended Settlement Agreement, which increased the monies available to the Settlement Class Members by up to $2 million from the original settlement agreement, such that each Authorized Claimant would likely receive at least $100 under the Settlement. Vines Decl. at ₧ 18. The Amended Settlement Agreement defined the Settlement Class as:

> all individuals in the United States who received a call made by or on behalf of Verde Energy USA, Inc. to the individual's cellular or landline telephone, through the use of a pre-recorded or artificial voice, from October 16, 2013 to February 14, 2019.

Settlement ¶ 1.25.[6] The Amended Settlement Agreement provides that the Settlement funds will be used to make Settlement payments to Authorized Claimants who submit timely and valid Claim Forms on a *pro rata* basis (the "Calculated Payment"); provided, however, that if an Authorized Claimant's Calculated Payment totals less than One Hundred Dollars ($100), the Calculated Payment will be deemed to be $100, and Defendant will provide additional funds to the Settlement Administrator equal to the lesser of (i) the amount necessary to ensure that each Authorized Claimant receives a Calculated Payment of $100, or (ii) Two Million Dollars ($2,000,000) (such lesser amount, the "Supplemental Fund").[7] Settlement ¶ 2.2.

---

[6] Excluded from the Settlement Class are: (i) Verde; (ii) any affiliates of Verde; and (iii) any employee of Verde or members of their Immediate Family. *Id.* If approved, the Settlement will resolve all claims asserted by the Parties. Settlement ¶¶ 1.21, 1.22, 5.4, 5.6, 7.2, 7.6.

[7] The Parties agreed that Defendant's liability under the Settlement shall not exceed the "Maximum Settlement Amount" of $5,000,000. Settlement ¶ 2.2. In the event that the aggregate total dollar value of all Calculated Payments submitted by the Authorized Claimants exceeds the Net Settlement Fund plus the Supplemental Fund, each Authorized Claimant's Calculated Payment

On December 19, 2019, Plaintiffs filed a motion to preliminarily approve the Amended Settlement Agreement (Dkt. 134). Following a hearing on January 9, 2020, the Court entered an Order on January 17, 2020 (Dkt. 136) (the "Preliminary Approval Order"), which preliminarily: certified the Settlement Class, approved the Settlement, and appointed Plaintiffs as the Class Representatives, Plaintiffs' Counsel as Class Counsel and Angeion Group, LLC as the Settlement Administrator. Dkt. 136 at ¶¶ 2, 3, 4, 7. The Preliminary Approval Order also, among other things, approved the proposed form of Notice and Claim Form and directed that the Settlement Administrator provide Notice of the Settlement to the Class. *Id.* at ¶ 6; *see* Vines Decl. at ₱ 19.

If the Settlement is granted final approval, all eligible Settlement Class Members who submitted valid and timely Claim Forms will receive an equal distribution of the Net Settlement Fund. Vines Decl. at ₱ 21. The distribution per Authorized Claimant is currently estimated to be **$100**. *Id.*

As demonstrated above, Plaintiffs' Counsel has worked hard to obtain the Settlement, and the intensity of the Parties' discovery and litigation efforts since 2015 has ensured that the Settlement is the product of an informed understanding of the facts and law.

## III.   ARGUMENT

### A.   The Requested Attorneys' Fees Should Be Granted

#### 1.   Plaintiffs' Counsel Are Entitled to an Award from the Common Fund

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons

---

shall be reduced and the Authorized Claimant shall receive, as his/her/its Calculated Payment, a *pro rata* share of the Net Settlement Fund plus the Supplemental Fund. Settlement ¶ 2.3.

other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine is 'based on the equitable notion that those who have benefited from litigation should share its costs,' and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996) (quoting REPORT OF THE THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES, 15 (Oct. 8, 1985), 108 F.R.D. 237, 237 (1985)).

"'The percentage-of-recovery method is generally favored in cases involving a common fund,'" such as here. *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 196-97 (3d Cir. 2014) (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001)). That method "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (citation omitted). The percentage-of-the-fund method thus "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted). Even so, courts may use a second method, the lodestar method, "to cross-check its initial fee calculation." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). "The lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *In re AT&T Corp. Secs. Litig.*, 455 F.3d at 164.

"The awarding of attorneys' fees in a class action settlement is within the Court's discretion, provided that the Court thoroughly analyzes and reviews an application for such fees." *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08-cv-3610 (CLW), 2015 U.S. Dist. LEXIS 64987, at *17-18 (D.N.J. May 18, 2015), *aff'd*, 639 Fed. Appx. 880 (3d Cir. 2016) (citing

*In re Rite Aid*, 396 F.3d at 299).

<strong>2.    The Requested Fee Is Fair and Reasonable</strong>

The Settlement establishes a non-reversionary common fund of $3 million, as well as up to $2 million of a Supplemental Fund, from which Settlement Class Members will receive their allocations. However, Plaintiffs' Counsel seeks *only attorneys' fees and expense reimbursement from the $3 million Settlement Amount* and not from the $2 million Supplemental Fund.

The Third Circuit has identified ten factors that courts should consider in reviewing a request for attorneys' fees in such a common-fund case. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). The *Gunter/Prudential* factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at *12 (E.D. Pa. Jan. 24, 2011). As demonstrated below, the above factors strongly support that the requested one-third fee is appropriate, fair and reasonable.

<strong>a)    The Size of the Fund Created and Number of Persons Benefitted</strong>

Here, the Settlement benefits a Settlement Class of approximately 357,387 persons. Dkt. 134-2, Plaintiffs' Brief in support of Preliminary Approval at 17. Based on contact information in

10

Defendant's business records, the Settlement Administrator has advised that it has undertaken to contact each of the Settlement Class Members via direct mailings of the Notice and Claim Form. Vines Decl. at ₱ 20, Morrison Decl., at ₱₱ 5-7. The Settlement Administrator has now advised that as of May 4, 2020, it has processed 19,011 Claim Forms (approximately 5.3% of the Settlement Class). Morrison Decl., at ₱ 16. The percentage of Settlement Class Members who submitted Claim Forms is nearly identical to the five percent claims rate that was predicted by the Settlement Administrator as noted in Plaintiffs' motion for preliminary approval of the Settlement. *Accord* Dkt. 134-2 at ECF 21.

Thus, subject to final approval by the Court, the Settlement Administrator estimates that each of the Authorized Claimants will receive $100, the amount that the Court previously held would be fair and reasonable. *See* Vines Decl., Ex. 5, Morrison Decl. at ¶ 21, Dkt. 134-2 at ECF 21, Dkt. 136 at ¶ 4. In order to pay these amounts, it is further estimated that the entire value of the Settlement will include an amount from the Supplemental Fund, so that the final gross settlement amount will be approximately $3,283,700.  *See* Vines Decl., Ex. 5, Morrison Decl. at ¶ 21.

This distribution of $100 to each Authorized Claimant is excellent considering many other TCPA class action settlements.[8] Thus, the size of the Settlement Amount obtained by Plaintiffs' Counsel and the number of persons who will be benefitted by the Settlement weigh heavily in favor of the fee requested, which ultimately, if approved, will be 30% of the final gross settlement amount.

---

[8] *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

**b)**      <u>**The Presence or Absence of Substantial Objections**</u>

The Settlement Administrator has advised that it has received ***zero*** objections to any aspect of the Settlement by the 357,387 Settlement Class Members, including the requested attorneys' fees, expenses, and service awards. Vines Decl. at ¶ 20 n.5. Thus, this factor strongly favors granting this Motion.

**c)**      <u>**The Skill and Efficiency of the Attorneys Involved**</u>

The quality of the representation is also relevant in determining fee awards. "The Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'" *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d at 198). "In evaluating the skill and efficiency of the attorneys involved, courts have looked to 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Alexander v. Wash. Mut., Inc.*, No. 07-cv-4426, 2012 U.S. Dist. LEXIS 171611, at *6 (E.D. Pa. Dec. 4, 2012) (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

Here, the quality of Plaintiffs' Counsel's representation of Plaintiffs and the Settlement Class, as well as their skill and experience in the specialized field of consumer class action litigation, support the requested fee. *See* Vines Decl., at ¶¶ 3-7 & Ex. 1 (firm biography for Berger Montague PC); *see also id.* at Exhibits 2, 3, and 4 & exhibits A thereto (firm biographies for Hughes Ellzey, L.L.P., Bursor & Fisher, P.A., and Marcus & Zelman, LLC, respectively). As discussed above, Plaintiffs' counsel obtained a substantial non-reversionary cash recovery for the Settlement Class, where the risks and uncertainties of continued litigation could result in no

recovery for the Settlement Class whatsoever, even after multiple years of costly and time-consuming litigation. In addition, Defendant Verde's lead counsel, Eckert Seamans Cherin & Mellott, LLC, is well known for its track record of successfully defending class actions and other complex commercial cases, among other things. *See, e.g., Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 235 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) (denying plaintiffs' motion for class certification); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prod. Liab. Litig.*, 288 F.R.D. 445, 447 (C.D. Cal. 2013), *aff'd sub nom. Kramer v. Toyota Motor Corp.*, 668 F. App'x 765 (9th Cir. 2016) (same).

This factor also supports approval of the requested fee.

### d)    <u>The Complexity and Duration of the Litigation</u>

Courts have long recognized that "'particularly in class action suits, there is an overriding public interest in favor of settlement,' … because … 'class action suits have a well deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). "Settlement 'has special importance in class actions with their notable uncertainty, difficulties of proof, and length.'" *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474-GOODMAN, 2016 U.S. Dist. LEXIS 50315, at *26 (S.D. Fla. Apr. 13, 2016) (quoting *Turner v. Gen. Elec. Co.*, No. 05-cv-186-FTM-99DNF, 2006 U.S. Dist. LEXIS 65144, at *5 (M.D. Fla. Sept. 13, 2006) ("Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]")).

Indeed, "'one purpose of the percentage method' of awarding fees -- rather than the lodestar method, which arguably encourages lawyers to run up their billable hours -- 'is to encourage early settlements by not penalizing efficient counsel ....'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d

13

at 198 (quoting MANUAL FOR COMPLEX LITIG., FOURTH § 14.121, 2004 WL 258734, at *3). "Procuring a settlement, in and of itself, is never a factor that the district court should rely upon to reduce a fee award. To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases." *Id.* Significantly, "'the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'" *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Here, the Parties reached the Settlement only after several formal mediation sessions over the course of two years. Settlement discussions were first explored in the spring of 2017 through a highly experienced mediator, The Honorable Diane Welsh (Ret.). Vines Decl. ¶ 12. After those discussions were unsuccessful, the Parties engaged in additional fact and expert discovery, and then litigated through summary judgment. In the Spring of 2019, the Parties again agreed to mediate and retained the Honorable Lawrence F.  Stengel, the former Chief U.S. District Judge for the Eastern District of Pennsylvania (Ret.) to serve as the mediator (the "Mediator"). Vines Decl. ¶ 16. As the Court is aware, Chief Judge Stengel had presided over this case prior his retirement.

On April 15, 2019, Judge Stengel conducted a full day mediation session, and at the conclusion of that session, the Parties accepted his "Mediator's Compromise" settlement proposal subject to the negotiation of a definitive settlement agreement and the approval of the Settlement by the Court in accordance with FED. R. CIV. P. 23. *Id.* That agreement provided for a $3 million non-reversionary settlement fund. However, after the Court denied preliminary approval of that settlement (Dkt. 132), the Parties returned to the negotiating table to address concerns raised by the Court. Vines Decl. at ¶ 17. Ultimately, after significant additional negotiations, the Parties

agreed upon an Amended Settlement Agreement, which increased the monies available to the Settlement Class Members by up to $2 million from the original settlement agreement, such that each Authorized Claimant will receive $100 under the Settlement. Vines Decl. at ‖ 18.

Here, prior to agreeing to the Settlement, Plaintiffs' Counsel was well-versed in both the applicable law and facts at issue. In addition to conducting initial legal and factual research, Plaintiffs' Counsel received informal discovery from Defendant, including business records and call data relevant to the TCPA claims alleged, and conducted interviews of former Verde employees and agents regarding Verde's business practices. Plaintiffs' Counsel then considered the relative strengths and weaknesses of the Parties' claims and contentions and the benefits the Settlement offers to the Class. In view of the risks, uncertainties, and costs of continued litigation, Plaintiffs and their counsel made the reasoned decision that the terms of the Settlement are fair, reasonable and adequate, and that the Settlement is in the best interest of the Settlement Class.

As many courts have endorsed, "[i]nstead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery ... [such that] it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *16 (S.D.N.Y. Nov. 8, 2006) (citation omitted). Absent the Settlement, it is "entirely possible that the class would have recovered nothing at all, or a range of recovery not far from what this bird-in-the-hand supplies." *In re ATI Techs., Inc. Secs. Litig.*, No. 01-cv-2541, 2003 U.S. Dist. LEXIS 7062, at *7 (E.D. Pa. Apr. 28, 2003).[9]

---

[9] As the Court is aware from experience, the risk of no recovery here – and in complex cases of this type more generally – is real. In numerous hard-fought lawsuits, plaintiffs' attorneys (including the undersigned) have received little or no fee -- despite *years* of excellent, professional work -- due to the discovery of facts unknown when the case started, changes in the law while the case was pending, or a decision of a judge, jury, or court of appeals. *See, e.g.,*

15

This factor also weighs in favor of approving the requested fee.

e)      **The Risk of Nonpayment**

"Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." *Saini v. BMW of North America, LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *41 (D.N.J. May 21, 2015). As many courts have recognized, "[s]uccess is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable." *Martin v. Foster Wheeler Energy Corp.*, No. 06-cv-0878, 2008 U.S. Dist. LEXIS 25712, at *12 (E.D. Pa. Mar. 31, 2008). "[C]ourts have recognized that the risk of non-payment is heightened in a case of this nature where counsel accepts a case on a contingent basis." *Reinhart v. Lucent Techs., Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

Here, Plaintiffs' Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement."). In prosecuting this case, Plaintiffs' Counsel faced the "risks of establishing liability," as well as certifying and maintaining a certified class through judgment and any appeal. *In re Rite Aid*, 396 F.3d at 304. While Defendant ultimately agreed to settle, it is not without significant defenses that would be asserted on a contested motion to certify a class of affected persons and as to liability generally, whether during pretrial proceedings, during a jury trial or on an appeal. Among other defenses, Verde would argue that it had the requisite consent, in accord with the TCPA, prior to making calls to Settlement Class

---

*Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012) (affirming district court's ruling overturning jury verdict in favor of plaintiff class); *In re Oracle Corp. Secs. Litig.,* No. 01-cv-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment for defendants after eight years of litigation).

16

Members; and that Verde did not use a TCPA-actionable artificial or prerecorded voice; as well as various defenses to challenge the appropriateness of class certification. Again, the Settlement will avoid the risks and uncertainties inherent in continued litigation, in favor of a substantial and certain recovery now.

In addition, the potential damages in a TCPA case such as here could run into the hundreds of millions or more.[10] As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation…. *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].… [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank U.S.*, No. 12-cv-5510, 2016 U.S. Dist. LEXIS 26184, at *23-24 (N.D. Ill. Mar. 2, 2016) (emphasis added); *see also Reinhart v. Lucent Techs., Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

Again, this factor weighs in favor of approval.

### f)   The Amount of Time Devoted by Plaintiffs' Counsel

Plaintiffs' Counsel has to date collectively expended approximately 2,049.10 hours litigating this case since its inception. Vines Decl. ¶ 36. This results in an aggregate lodestar to date of $1,282,332.50. *Id.* The amount of time spent by Plaintiffs' Counsel over the past four years

---

[10] For each violation, the TCPA provides that a consumer may recover $500 in damages and up to $1,500 for willful or knowing violations. 47 U.S.C. § 227(b)(3). Thus, if Verde called each of the 357,387 phone numbers without the consent required by the TCPA only one time, the damages could range from $178 million to $536 million (clearly amounts that Verde could never pay).

of hard-fought litigation is testament to significant commitment of resources and dedication to this litigation, and weighs in favor of the fee requested. *Accord Moore v. Comcast Corp.*, 2011 U.S. Dist. LEXIS 6929, at *13-14 ("Class counsel successfully litigated defendants' motion to dismiss, engaged in extensive discovery, and obtained class certification by pursuing novel legal theories. The defendants opposed class counsel each step of the way. Class counsel nevertheless engaged in this litigation for two years on a contingent basis.").

Additionally, a lodestar cross-check confirms that the requested attorneys' fee of $1 million to all four law firms comprising Plaintiffs' Counsel is reasonable, as the current lodestar actually results in a multiplier of approximately 0.78.[11] Vines Decl. at ¶ 37. The ***negative*** multiplier will be even slightly greater at the conclusion of the litigation considering the additional time that Plaintiffs' Counsel will expend on this litigation to bring it to a close. *Id.*

The Third Circuit has repeatedly observed that multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d at 545 (quoting *In re Prudential*, 148 F.3d at 341). However, when the lodestar is less than one, this "reveals that Class Counsel's fee request constitutes only a fraction of the work that they billed." *In re Ins. Brokerage Antitrust. Litig.*, 579 F.3d at 284. Moreover, a negative multiplier "means that class counsel would receive less under a percentage fee award than they would receive using their usual billing rates." *Blofstein v. Michael's Family Rest., Inc.*, No.

---

[11] "The lodestar cross-check is performed by 'multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys.'" *Schuler v. Meds. Co.*, No. 14-cv-1149 (CCC), 2016 U.S. Dist. LEXIS 82344, at *29-30 (D.N.J. June 24, 2016) (quoting *Rite Aid*, 396 F.3d at 305). "When performing this analysis, the court 'should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter.'" *Id.* (quoting *Rite Aid* at 306). "Thus, the lodestar multiplier is equal to the proposed fee award divided by the product of the total hours and the blended billing rate." *Id.*

18

17-cv-5578, 2019 WL 3288048, at *11 (E.D. Pa. July 19, 2019) (citing *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 106 (E.D. Pa. 2013) (explaining the meaning of "negative multipliers")). Here, "[t]he negative lodestar in this case provides additional support for the requested attorneys' fees." *Id.*

If the Settlement is granted final approval, Plaintiffs' Counsel will expend additional time in connection with supervising the Settlement Administrator in claims administration and overseeing the distribution of the Net Settlement Fund to Authorized Claimants, among other things. Vines Decl. ¶ 37. This factor also supports the requested fees.

### g)     The Awards in Similar Cases

In class actions, "courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (collecting cases). Courts in this Districts have repeatedly found that fee awards of one-third of a class recovery are "consistent with attorney's fees awards generally granted in this Circuit." *In re Fasteners Antitrust Litig.*, No. 08-MD-1912, 2014 WL 296954, at *7 (E.D. Pa. Jan. 27, 2014) (citing *Steele v. Welch*, No. 03-cv-6596, 2005 U.S. Dist. LEXIS 16577, at *5-6 (E.D. Pa. May 20, 2005) (finding a fee of 33%, plus expenses, to be reasonable); *In re Corel Corp.*, 293 F. Supp. 2d 484, 497-98 (awarding counsel one-third of the settlement fund in addition to the reimbursement of litigation expenses); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433-34 (E.D. Pa. 2001) (approving a fee request of one-third of the settlement fund plus nearly $1,800,000 in expenses)). Indeed, the Third Circuit recently affirmed attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector. *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 Fed. Appx. 880, 884.

Here, the requested fee is only one-third of the original $3 million non-reversionary Settlement Amount. Plaintiffs' Counsel do not seek any fee on the portion of the $2 million Supplemental Fund that will be paid out to Authorized Claimants. The proposed fee, which has met with zero objections by Settlement Class Members, is not only fair and reasonable, but is wholly in line with fees awarded in TCPA class actions generally. *See, e.g., Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (finding 33% award appropriate in "in smaller cases – particularly where the common fund is under $10 million"). Thus, this factor weighs in favor of approval.

### h)    The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups

Here, "[t]he entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (approving 33.1% fee in consumer class action).  As such, this factor supports the fee requested.

### i)    The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement

"[T]he goal of the fee setting process is to 'determine what the lawyer would receive if he were selling his service in the market rather than being paid by Court Order.'" *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2, 2004). "'[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'" *Bradburn Parent Teacher Store*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (quoting *In re Ikon*, 194 F.R.D. at 194)). Here, Plaintiffs' Counsel would have sought attorneys of more than one-third and typically 35% to 40% if the claims had been pursued on an individual basis. *See* Vines Decl. ¶ 46

20

(counsel typically contracts to seek attorneys' fees of 35% to 40% in individual representations). The requested fee here is well below that range. This factor too favors the one-third fee requested.

### j) Any Innovative Terms of Settlement

"The terms of this settlement are relatively standard. In the absence of any innovative terms, this factor neither weighs in favor nor against the proposed fee request." *Accord In re Flonase Antitrust Litig.,* 291 F.R.D. 93, 105 (E.D. Pa. 2013).

Here, the primary innovative term was the creation of the Supplemental Fund, for which Plaintiffs' Counsel do not seek any additional fees, given that the negotiation over the Supplemental Fund followed the Court's comments at the first preliminary approval hearing. Based on the above analysis, the requested attorneys' fee is fair and should be granted.

### B. Plaintiffs' Counsel's Expenses Are Reasonable And Should Be Reimbursed

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l Secs. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995)). Indeed, "'[t]he common-fund doctrine … allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred.'" *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *12 n.6 (quoting REPORT OF THE THIRD CIRCUIT TASK FORCE, 108 F.R.D. at 241).

Collectively, Plaintiffs' Counsel have currently expended a total of $84,569.47 on this case to date. Vines Decl. ¶ 50. This amount is less than the maximum ceiling of $100,000 set forth in the Notice to the Settlement Class. *Id.* at ¶ 51. Plaintiffs' Counsel anticipates that the firms may incur some additional expenses in preparing for and attending the Final Approval Hearing and in

administering and distributing the Settlement, and therefore request that they may submit for reimbursement of these expenses with the Settlement Administrator so long as the $100,000 cap is not exceeded.

All of the expenses incurred were reasonable and necessary to the prosecution of this case. *Id.* at ¶ 45. From the beginning of the case, Plaintiffs' Counsel were aware that they might not obtain any recovery as discussed above and, at the very least, would not recover anything until the Action was successful in producing a recovery. Plaintiffs' Counsel also understood that, even if the case were ultimately successful, an award of expenses would not compensate counsel for the lost use of the funds advanced to prosecute this Action. As set forth in the accompanying Vines Decl. (at ¶¶ 47-51), the expenses incurred are reasonable in the circumstances and should be approved. *Accord Tavares v. S-L Distrib. Co.*, No. 13-cv-1313, 2016 U.S. Dist. LEXIS 57689, at *56 (M.D. Pa. May 2, 2016).

### C.     Plaintiffs Should Receive The Requested Service Award

"'Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334 n.65 (3d Cir. 2012) (citation omitted). "'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation,' and to 'reward the public service of contributing to the enforcement of mandatory laws.'" *Id.* (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)). "[C]ourts regularly approve $5,000 incentive awards in common fund cases like this one. *Kolinek v. Walgreen Co.*, 311 F.R.D. at 503 (TCPA case; dismissing objections to $5,000 service award, finding that plaintiff "attached his name to this litigation and participated in pre-filing investigation and informal and formal

22

discovery"); *see also Gehrich v. Chase Bank*, 2016 U.S. Dist. LEXIS 26184, at *61 (courts have "routinely granted $5,000 incentive awards to named plaintiffs in TCPA cases"); *In re Capital One*, 80 F. Supp. 3d at 809 (accord); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (collecting cases)); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d at 1210 (awarding two plaintiffs each $5,000).

Here, Plaintiffs assisted Plaintiffs' Counsel in the development of the facts in this case and preparation of the Complaint prior to filing. *See* Vines Decl. at ¶ 52; *see also* Exhibit 6-10 attached thereto. Plaintiffs conferred with Plaintiffs' Counsel throughout this litigation in matters of discovery and during the mediation process. *Id*. Plaintiffs' willingness to step forward and serve as the lead plaintiffs and Class fiduciaries led to not only the initiation of the litigation but also to the successful resolution of the Action and the tangible benefits that the Settlement will provide to the Class, subject to the approval of the Court. *Id*. Moreover, the Notice mailed to Class Members states that Plaintiffs' Counsel intend to ask the Court for a "service awards of $5,000 to each of the five named plaintiffs" (Dkt. 134-1, Ex. B, Post-card Notice). *See also* Dkt. 134-1, Ex. B (Long-form Notice, available on the Settlement Website, stating that "Plaintiffs' Counsel will ask the Court for … a Service Award up to $5,000 payable to each of the five named Plaintiffs for their service in representing the Settlement Class in this Action."); *accord* Dkt. 136, Preliminary Approval Order at �ℙ 6, approving form and content of Notice).

Here, the Service Award requested is "fair and reasonable" and should be approved. *Landsman & Funk,* 2015 U.S. Dist. LEXIS 64987, at *22-23; *accord Meijer, Inc. v. 3M*, No. 04-cv-5871, 2006 U.S. Dist. LEXIS 56744, *83 (E.D. Pa. Aug. 15, 2006).

## IV.    <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs' Counsel respectfully request that the Court approve the requested attorneys' fees, expenses, and service awards as fair and reasonable.

Dated May 6, 2020                                          Respectfully submitted,

                                                           BERGER MONTAGUE PC


                                                           By:  /s/  Lane L. Vines
                                                           Shanon J. Carson (scarson@bm.net)
                                                           Lane L. Vines (lvines@bm.net)
                                                           1818 Market Street, Suite 3600
                                                           Philadelphia, PA  19103
                                                           Tel.: (215) 875-3000
                                                           Fax: (215) 875-4604

                                                           W. Craft Hughes (craft@hughesellzey.com)
                                                           Jarrett L. Ellzey (jarrett@hughesellzey.com)
                                                           HUGHES ELLZEY, LLP
                                                           2700 Post Oak Boulevard, Suite 1120
                                                           Galleria Tower I
                                                           Houston, TX  77056
                                                           Tel.: (713) 554-2377
                                                           Fax: (888) 995-3335

                                                           Scott A. Bursor (scott@bursor.com)
                                                           Joseph I. Marchese (jmarchese@bursor.com)
                                                           Joshua D. Arisohn (jarisohn@bursor.com)
                                                           BURSOR & FISHER, P.A.
                                                           888 Seventh Avenue
                                                           New York, NY 10019
                                                           Tel.: (646) 837-7150
                                                           Fax: (212) 989-9163

                                                           Ari H. Marcus (ari@marcuszelman.com)
                                                           MARCUS & ZELMAN, LLC
                                                           701 Cookman Avenue, Suite 300
                                                           Asbury Park, NJ 07712
                                                           Tel.: (732) 695-3282
                                                           Fax: (732) 298-6256

                                                           *Attorneys for Plaintiffs and the Settlement Class*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2020, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.


_/s/ Lane L. Vines_____
Lane L Vines